UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
================================
BRANDON HAWKINS,
KATELYNN BOLDEN
and ERICA SEYMOUR,                                22-cv-905-WMS-HKS

                Plaintiffs,
  v.

CITY OF BUFFALO,
BUFFALO POLICE DEPARTMENT
and CAPTAIN AMBER BEYER,

                Defendants.
================================

## NOTICE OF MOTION

      Please take notice, that upon the papers annexed hereto, the defendants will move this Court for judgment on the pleadings as to all claims in the complaint pursuant to Fed.R.Civ.P. 12(c); and, in the alternative, as to the claim in the complaint for denial of overtime opportunities only, for summary judgment pursuant to Fed.R.Civ.P. 56 on the limited basis of failure to exhaust CBA grievance procedures. The defendants intend to file reply papers.

Dated:        Buffalo, New York
               May 6, 2024              Respectfully submitted,

                                            Cavette A. Chambers
                                            Corporation Counsel
                                            Attorney for Defendants
                                            By:    s/David M. Lee
                                            Assistant Corporation Counsel
                                            City of Buffalo Department of Law
                                            65 Niagara Square, 1114 City Hall
                                            Buffalo, New York 14202
                                            (716) 851-9691
                                            dlee@city-buffalo.com

## ATTORNEY DECLARATION

David M. Lee, an attorney admitted to practice in this Court, declares under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1. I am an Assistant Corporation Counsel for the City of Buffalo, of counsel to Cavette A. Chambers, Corporation Counsel, and attorney for the defendants. Having been assigned this matter, I am fully familiar with it.

2. This declaration, and accompanying statement of facts and memorandum of law, are submitted in support of the within motion.

3. The plaintiffs sued to the defendants under federal and state law to recover damages, *inter alia*, for employment discrimination on the basis of race. Dkt. #1 at ¶¶1-2.

4. The plaintiffs Brandon Hawkins and Katelynn Bolden (f/k/a Katelynn Barlow) are African-American police officers employed by the City of Buffalo. Dkt. #1 at ¶¶5, 6.

5. The plaintiff Erica Seymour is an African-American clinician employed by Endeavor Health Services, which had a contract with the Buffalo Police Department (BPD). Dkt. #1 at ¶7. Clinician Seymour has since resigned from her position at Endeavor. Dkt. #1 at ¶53.

6. The plaintiffs worked with BPD's Behavioral Health Team (BHT), a unit that was led by the defendant, Buffalo Police Captain Amber Beyer, who the plaitniffs claim was a supervisor. Dkt. #1 at ¶¶11, 54.

7. The plaintiffs' claims arise principally out of two events.

8. First, the plaitniffs accuse Captain Beyer of making comments with racial overtones during a BHT meeting on May 2, 2022 in response to a video of an incident in which white police officers in a different jurisdiction racially profiled and pulled over a uniformed black police officer. Dkt. #1 at ¶¶15-18.

9. It is not alleged that Officer Hawkins or Clinician Seymour were present when Captain Beyer made the statements about the video on May 2, 2022. Upon information and belief, the complaint does not make such an allegation because Officer Bolden was only plaintiff who attended the May 2, 2022 meeting.

10. Second, on September 29, 2022, Captain Beyer read aloud a Facebook post that contained the n-word, which was written by a mentally ill Buffalo resident who Captain Beyer wanted the BHT to check on. Dkt. #1 at ¶¶48-50.

11. Officer Hawkins applied for injured-on-duty benefits pursuant to New York General Municipal Law §207-c due to a claimed on-the-job injury, based on the same events alleged in his federal complaint now before the Court. The matter went to a hearing, and the hearing officer confirmed the City's denial of Officer Hawkin's application for §207-c benefits. The hearing officer's findings and determination is attached hereto as **Exhibit A**.[1]

---

[1] The defendants request that the Court take judicial notice of the hearing officer's findings and determination when considering this motion. See p. 6, below.

12. Officer Hawkins and Officer Bolden claim that they were denied overtime opportunities based on race, and in violation of the officers' collectively bargained rights. Dkt. #1 at ¶59.

Dated:   Buffalo, New York
         May 6, 2024

                                              s/David M. Lee

**STATEMENT OF FACTS**

Pursuant to Loc.R.Civ.P. 56(a)(1), the defendants submit that there is no genuine dispute as to the following material facts:

1. Officer Hawkins and Officer Bolden's employment is governed by a collective bargaining agreement between the City of Buffalo and the Buffalo Police Benevolent Association (CBA). The CBA contains provisions relating to overtime opportunities and requires the officers to follow a grievance procedure for any disputes arising under the CBA. True and accurate copies of those provisions are attached hereto as **Exhibit B**.

2. The affidavit of Dawn Kent, Deputy Commissioner of the Buffalo Police Department, establishes that neither Officer Hawkins nor Officer Bolden submitted a grievance in writing concerning overtime opportunities as required by the CBA. A true and accurate copy of Deputy Commissioner Kent's declaration is attached hereto as **Exhibit C**.

Dated:     Buffalo, New York
           May 6, 2024

                                        s/David M. Lee

**MEMORANDUM OF LAW**

On a Rule 12(c) motion for judgment on the pleadings—like a motion to dismiss under Rule 12(b)(6) for failure to state a claim—the court must accept as true the factual matter pled in the complaint and assess the legal feasibility of the complaint. In making this assessment, the court must draw all reasonable inferences in the plaintiff's favor. *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009). In deciding a Rule 12(c) motion, "a court may consider matters of which judicial notice may be taken," *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44, n.1 (2d Cir. 2014), such as arbitration decisions and decisions of hearing officers. *See Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of an impartial hearing officer's decision); *Varecka v. CSX Transportation, Inc.*, 2022 WL 1750700, *1 (W.D.N.Y. 2022) (taking judicial notice of arbitration decisions).

The plaintiffs sued the defendants for race discrimination and a hostile work environment under Title VII and the NYSHRL, as well as retaliation after complaining about discrimination under Title VII. The plaitniffs also brought discrimination, hostile work environment, and retaliation claims under 42 U.S.C. §1981. Finally, the plaitniffs brought a Fourteenth Amendment equal protection claim. The complaint seeks $135 million in damages for each plaintiff. Dkt. #1 at 9-17. In all, nine claims have been asserted in the complaint, each of which the defendants contend is subject to dismissal for the reasons set forth below.

I.

**Plaintiffs Do Not State a Claim Against the BPD**

The defendant Buffalo Police Department (BPD) is not amendable to suit and no claims lie directly against it. *See United States v. Bommer*, 613 F.Supp.3d 712, 719 (W.D.N.Y. 2020) ("Plaintiff lists the Buffalo City Police as a defendant. However, a police department is an administrative arm of the municipal corporation and cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity") (cleaned up). Accordingly, the BPD's motion for judgment on the pleadings should be granted.

II.

**Plaintiffs Do Not State a Claim Against Captain Beyer under Title VII**

Claims under Title VII and the NYSHRL are not cognizable against individuals accused of discriminatory conduct. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual supervisors are not subject to liability"); *Stevenson v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 179768, *21 (W.D.N.Y. 2022) (holding that individuals cannot be liable under the NYSHRL unless they are aiders and abettors, and an individual cannot aid and abet his own discriminatory conduct). Accordingly, Captain Beyer's motion for judgment on the pleadings on the plaintiffs' Title VII and NYSHRL claims should be granted.[2]

---

[2]   The plaintiffs' claims under Title VII and the NYSHRL are brought against the City and BPD only. Dkt. #1 at 9-12. In an abundance of caution, however, Captain Beyer moves for judgment on the pleadings on these claims.

7

III.

**Plaintiffs Do Not State a Claim under §1981**

42 U.S.C. §1981[3] does not provide a private right of action against state actors, including municipalities and municipal employees. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) ("We . . . join nine of our sister Circuits in concluding that §1981 does not provide a separate private right of action against state actors"); *Charles v. City of New York*, 2023 WL 2752123, *5 (S.D.N.Y. 2023) ("section 1981 does not provide an independent cause of action for state actors including municipal employees in their individual capacities"). Accordingly, the defendants' motion for judgment on the pleadings on the plaintiffs' §1981 claims should be granted.

IV.

**Plaintiffs Do Not State a Claim for Discrimination or Retaliation under Title VII**

Title VII of the Civil Rights Act of 1964 (Title VII)[4] prohibits employment-related discrimination on the basis of race, among other bases. As relevant here, a Title VII plaintiff may establish an employer's liability under the statute by showing that he suffered an adverse job action on the basis of race, or that he was subjected to harassment on the basis of race that amounted to a hostile work environment. Title VII

---

[3] Section 1981 prohibits race discrimination and deals with the protection of a limited range of civil rights. The statute is most often invoked in contractual matters because the statute provides, *inter alia*, that all persons shall have the same contractual rights as white citizens. Here, however, the plaitniffs not specify in the complaint which right or rights under §1981 they claim to have been deprived of, Dkt. #1 at 12-14, which is an additional reason to dismiss the §1981 claims in this case.

[4] *See* 42 U.S.C. §§2000e *et seq.*

also prohibits retaliation against employees who complain about discrimination. *See Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022).[5]

       As an initial matter, the City of Buffalo was not the employer of Clinician Seymour. Seymour was employed by Endeavor, which had a contract with the City to provide mental health services for the Buffalo Police Department. Dkt. #1 at ¶7. Although the absence of a direct employment relationship does not automatically bar a Title VII claim, here, the complaint's conclusory allegations fail to plausibly allege that the City was Seymour's joint employer. Dkt. #1 at ¶13. *See Paulson v. Tidal*, 2018 WL 11468464, *2-3 (S.D.N.Y. 2018) (holding that plaintiff's barebones allegations were insufficient to invoke the joint employer doctrine to support a Title VII claim); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement") (cleaned up). Because the complaint is devoid of factual detail necessary to state a plausible claim that Clinician Seymour and the City had an employment relationship, Seymour's Title VII claims should be dismissed.

       Turning to the substantive issue, to defeat a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that "the

---

[5] The New York State Human Rights Law (NYSHRL) also contains anti-discrimination and anti-retaliation provisions. *See* New York Executive Law §§290 *et seq*. Here, the plaintiffs did not assert a retaliation claim under the NYSHRL. In any event, courts generally examine claims under the NYSHRL in the same manner as corresponding Title VII-based claims. *See Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 440, n.4 (W.D.N.Y. 2021) ("Discrimination and retaliation claims pursuant to the NYSHRL are analyzed under the same standards as Title VII claims"). Therefore, the two statutes will be considered together and referred to simply as "Title VII" in this motion.

employer took adverse action against him . . ." *Vega*, 801 F.3d at 87. An employee sustains an adverse employment action if he or she "endures a materially adverse change in the terms and conditions of employment." *Id.* at 85 (cleaned up). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (cleaned up).

  Here, the plaintiffs have not plausibly alleged that the City took adverse action against them. Clinician Seymour resigned from her position at Endeavor. Dkt. #1 at ¶53. Officer Bolden was out work due to a physical injury when the complaint was filed. Dkt. #1 at ¶56. Officer Hawkins claims that he "was forced to go out on sick leave," Dkt. #1 at ¶54, and that he was not granted permission to "stay at a separate hotel" to avoid Captain Beyer at an out-of-town work conference. Dkt. #1 at ¶40.

  Under these circumstances, it is evident that the plaitniffs did not suffer a "materially adverse change" in their employment. *See Vega*, 801 F.3d at 85 (to be materially adverse, a change in employment must be "more disruptive than a mere inconvenience"). Moreover, any change in the plaintiffs' employment was the result of their own decisions, rather than the result of any adverse action by the City, which does not give rise to a Title VII claim. *See Keshinover v. New York State Off. of Parks, Recreation & Historic Pres.*, 2019 WL 5212235, *9 (S.D.N.Y. 2019) ("Where the adverse action upon which plaintiff seeks to rely is his own decision . . ., not anything that the Defendants said or did, that plaintiff has failed to meet his *prima facie* burden") (cleaned up), *aff'd*,

10

826 F. App'x 109 (2d Cir. 2020) (agreeing that the plaintiff suffered no adverse employment action "[f]or substantially the same reasons" stated by the district court").

Furthermore, while a constructive discharge can be an adverse employment action, here, the facts alleged by Clinician Seymour, even if true, do not demonstrate that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Lehman v. Bergmann Assocs., Inc.*, 11 F.Supp.3d 408, 415 (W.D.N.Y. 2014). The standard is not whether Clinician Seymour's working conditions were "difficult or unpleasant" or that she would have "preferred not to continue working" for the City. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). The constructive discharge standard is a high one, and Seymour needed to plead facts that give rise to an inference that her resignation was "involuntary." *Lehman*, 11 F.Supp.3d at 415. She did not.

Similarly, while the plaintiffs allege that Captain Beyer's conduct caused them emotional distress, that is insufficient to qualify as an adverse employment action. *See Eldridge v. Rochester City Sch. Dist.*, 968 F.Supp.2d 546, 558 (W.D.N.Y. 2013) (reading the complaint liberally, and concluding that a teacher failed to allege that she suffered an adverse employment action because, even though the school principal's conduct caused the teacher stress and anxiety, the teacher did not experience any tangible adverse employment consequence as a result of the principal's conduct).

Finally, as with a Title VII discrimination claim, "a retaliation plaintiff must plead facts sufficient, if taken as true, to establish . . . and adverse employment action . . ." *Brown v. City of New York*, 622 F. App'x 19, 20, n.1 (2d Cir. 2015).

11

"Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). As such, the plaitniffs' retaliation claims fail for the same reason as their Title VII discrimination claims—none of the harms alleged in the complaint plausibly constitute punishment or adverse employment action.

In sum, the complaint does not allege that the City subjected the plaintiffs to any tangible adverse employment action. Accordingly, their discrimination and retaliation claims under Title VII cannot be sustained, and the City's motion for judgment on the pleadings on these claims should be granted.

V.

**Plaintiffs Do Not State a Claim for Hostile Work Environment under Title VII or NYSHRL**

Unlike discrimination and retaliation claims, a plaintiff need not allege an adverse employment action to sustain a hostile work environment claim. That is because whereas Title VII claims scrutinize discrete harms such as hiring or discharge, a hostile work environment claim analyzes the workplace environment as a whole. *See Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 433 (E.D.N.Y. 2014), citing *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001).

To establish a hostile work environment under Title VII, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*,

12

795 F.3d 297, 320–21 (2d Cir. 2015) (cleaned up).[6] This same standard also used to govern hostile work environment claims under the NYSHRL. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). But the NYSHRL was amended in 2019 to eliminate the "severe and pervasive" standard. The new standard requires a plaintiff to allege that he was subjected to "inferior terms, conditions, or privileges of employment" because of his protected status. *Tortorici v. Bus-Tev, LLC*, 2021 WL 4177209, *13 (S.D.N.Y. 2021). Here, because the plaitniffs' claims accrued in 2022, the Court should apply the new standard to the plaintiffs' NYSHRL hostile work environment claims.

Here, the allegations in the complaint do not support a finding that the plaintiffs were exposed to a hostile work environment under either the federal or state standard. With respect to the first incident referred to in the complaint, the plaitniffs point to several comments with racial overtones allegedly made by Captain Beyer. Dkt. #1 at ¶¶16-18. With respect to the second incident referred to in the complaint, the plaintiffs claim that they were disturbed when Captain Beyer aloud a Facebook post that contained the n-word. Dkt. #1 at 49.

These allegations, accepted as true, are not enough to show that Captain Beyer's conduct was so severe or pervasive as to have created an objectively hostile working environment under Title VII. *See Baron v. Winthrop Univ. Hosp.*, 211 F. App'x 16, 17 (2d Cir. 2006) (a jury could not reasonably find a hostile work environment on the

---

[6] This Tite VII standard has an objective component: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive." *Id.* at 321 (cleaned up). In addition, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (cleaned up).

13

basis of a series of sexist remarks about women, since the alleged remarks were not sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment); *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999) (hostile work environment claim failed based on three isolated and mild racially motivated comments, which could not suffice to create a hostile working environment),[7] *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (the plaintiff failed to state a claim for a hostile work environment where a supervisor made racist remarks and one such comment was directed at the plaintiff herself, since the comments, although despicable and offensive, failed to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments [and] slurs . . . to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity").

---

[7]  In *Richardson*, a separate hostile work environment claim survived based on 10 incidents over 3½ years, including multiple uses of the n-word. Here, in contrast, while the use of the n-word is abhorrent, Captain Beyer did not call anyone the n-word or use the word in a conversation; she read the word aloud from a Facebook post written by someone else as part of her job. Nor was Captain Beyer's use of the word coupled with threats of violence or other racial slurs. The legal issue before the Court is not whether it was wrong for Captain Beyer to say the n-word. The issue is whether her use of that word created a hostile work environment within the meaning of Title VII or NYSHRL.

The plaintiffs' hostile work environment claim fairs no better under the more lenient NYSHRL standard.[8] *See Whitley v. Montefiore Med. Grp.*, 2016 WL 1267788, at *10 (S.D.N.Y. 2016) (hostile work environment claim under the NYCHRL failed where the use of the n-word to address plaintiff was not motivated by racial hostility); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80 (1st Dept. 2009) (emphasizing that the NYCHRL is not a "general civility code" and that "petty slights and trivial inconveniences" are not actionable under it); *Ellison v. Chartis Claims, Inc.*, 53 Misc. 3d 1203(A), *18 (Sup. Ct., Kings County, 2016) (in a race discrimination action, holding that two isolated offensive remarks were "pretty slights, which cannot have created a hostile work environment"), *aff'd* 178 A.D.3d 665, 669 (2nd Dept. 2019).

In sum, the incidents alleged by the plaitniffs do not rise to the level of an objectively hostile work environment. "There may well exist circumstances where a single use of the [n-word] would rise to the level of a hostile work environment, but on the facts present here, this is not such a case." *Albert-Roberts v. GGG Const., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013). Accordingly, the City's motion for judgment on the pleadings on the plaintiffs' hostile work environment claims should be granted.

---

[8]    Although the case law on this new standard is scarce, "the new standard is similar to the standard for stating a hostile work environment claim under the [New York City Human Rights Law]." *Tortorici*, 2021 WL 4177209, *13.

## VI.

### Plaitniffs Do Not State a §1983 Claim of Race Discrimination in Violation of Equal Protection

42 U.S.C. §1983 is not itself a source of substantive rights, but it provides a method for vindicating federal rights, elsewhere conferred, that have been violated by persons acting under color of law. *See Schuloff v. Queens Coll. Found., Inc.*, 165 F.3d 183, 184 (2d Cir. 1999).

The Equal Protection Clause "protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race," but it "does not protect against retaliation due to complaints of racial discrimination." *Littlejohn*, 795 F.3d at 315, n.14; 320 (cleaned up). The plaintiffs' retaliation claim therefore automatically fails under §1983. And because §1983 equal protection claims parallel Title VII claims[9]—except that a §1983 claim, unlike a Title VII claim, can be brought against individuals—the plaintiffs' §1983 equal protection claims fail for the same reasons that their Title VII claims fail.

## VII.

### Officer Hawkins' Claims are Barred by the Doctrine of Collateral Estoppel

A court may dismiss a claim on collateral estoppel grounds on a motion for judgment on the pleadings. *Casler v. W. Irondequoit Sch. Dist.*, 563 F.Supp.3d 60, 65 (W.D.N.Y. 2021). "Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

---

[9]   *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (cleaned up).

Federal courts apply New York law in determining the preclusive effect of a New York judgment. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Under New York law, collateral estoppel principles apply to decisions in arbitration proceedings and in quasi-judicial administrative hearings. *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) (arbitration proceeding); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 298, n.23 (S.D.N.Y. 2004) (administrative hearing). The proponent of collateral estoppel has the burden to show identity of the issue that was decided in the present proceeding and is decisive in the present action, while the opponent has the burden to show that he did not have a full and fair opportunity to litigate the issue in the prior proceeding. *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

Here, Officer Hawkins applied for injured-on-duty benefits pursuant to New York General Municipal Law §207-c due to a claimed on-the-job injury, based on the same events alleged in his federal complaint filed in this Court. *Compare* Dkt. #1 *with* Exh. A hereto. The matter went to a hearing, and the hearing officer confirmed the City's denial of Officer Hawkin's application for §207-c benefits. Specifically, the hearing officer found that there was no causal relationship between the race-based harassment Officer Hawkins was allegedly experiencing at the hands of Captain Beyer and his claimed emotional and physical stress. *See* Exh. A hereto at 14-16. This factual determination is entitled to preclusive effect with respect to Officer Hawkin's claims in

17

this lawsuit that he endured conduct by Captain Beyer so intolerable that it amounted to actionable harassment and adverse employment action due the emotional and physical stress it caused.

## VIII.

### No Adverse Employment Action is Alleged for Denial of Overtime. Nevertheless, the Grievance Procedure Mandated by the CBA was not Exhausted.

In certain circumstances, a denial of overtime can amount to an adverse employment action, but only if the plaintiff sufficiently alleges that he or she was materially harmed by the action. *See Carrington v. Mota*, 2017 WL 3835883, at *9 (S.D.N.Y. 2017). Here, the complaint makes no such assertion, nor do the officers claim that they themselves were denied an overtime work opportunity or even that they had a right to overtime under the CBA. The complaint fails to allege that any denial of overtime resulted in some material detriment to the officers, such as loss of earnings or harm to their professional growth or career advancement. Dkt. 1 at ¶59. In the absence of any facts indicating that Officer Hawkins or Officer Barlow were materially harmed from any denial of overtime, the complaint fails to allege that the denial rose above a minor workplace inconvenience.

In the alternative, while it has been held that an employee need not exhaust a grievance procedure under a CBA before bringing suit under Title VII, *see Chopra v. Display Producers, Inc.*, 980 F. Supp. 714, 717 (S.D.N.Y. 1997), the threshold issue of an employee's right to receive a benefit under the CBA must be submitted to the grievance procedures in the CBA before the court can resolve a statutory claim.

18

Here, for example, the officers' claim of entitlement to overtime is a contractual right under the CBA, and therefore must be submitted to the grievance procedures in the CBA, before the Court can reach the officers' Title VII claim. *See Hoops v. Keys pan Energy*, 822 F.Supp.2d 301, 307 (E.D.N.Y. 2011) (where the plaintiff's entitlement to unpaid overtime under the FLSA hinged on his contractual right to receive night shift differentials under the CBA, holding that the court cannot adjudicate the statutory FLSA claim without a determination on the CBA claim first. "It is the threshold question that must be determined pursuant to the CBA dispute resolution procedures, and therefore the FLSA claim is premature"). Because the officers were required but failed to exhaust remedies available through the grievance procedure outlined in the CBA prior to seeking judicial relief, *see* Exhibits B and C hereto, the Court should grant the defendants summary judgment on this ground as to the officers claim that they were denied overtime opportunities.[10]

        For the reasons set forth above, the defendants' motion should be granted in its entirety.

Dated:       Buffalo, New York
              May 6, 2024

                                                        s/David M. Lee

---

[10] Customarily the defendant must bring a motion for summary judgment to obtain dismissal of a complaint for the failure to exhaust the grievance process, except when that failure is sufficiently clear from the face of the pleading, then dismissal for failure to state a claim may be appropriate. *See Patterson v. City of New York*, 2012 WL 3264354, *3 (S.D.N.Y. 2012).