STATE OF NEW YORK
CITY OF BUFFALO

———————————————————————

In the Matter of the Hearing pursuant to
General Municipal Law Section 207-c

**FINDINGS**

BRANDON HAWKINS,

                Appellant,

**AND**

CITY OF BUFFALO,

                Employer.

**DETERMINATION**

RE:  Denial of Injured-On-Duty Status

———————————————————————

BEFORE:        Jeffrey M. Selchick, Esq.
                  Hearing Officer

APPEARANCES:

                FOR BRANDON HAWKINS
                Buffalo Police Benevolent Association, Inc.
                Gilmore & Killelea, LLP
                Daniel M. Killelea, Esq.

                FOR CITY OF BUFFALO
                Goldberg Segalla, LLP
                Christopher P. Maugans, Esq.

       The undersigned was designated by the parties to act as Hearing Officer to hear and finally decide the issues stated below regarding the appeal of Police Officer Brandon Hawkins ("Appellant") regarding a challenge to a determination by the City of Buffalo ("City") that Appellant be denied a request for Injured-On-Duty (IOD) status due to a claimed on the job injury.

In a November 2, 2022 memo to Appellant from Deputy Police Commissioner Kent, the City denied Appellant's application for IOD on the grounds that:

- You have failed to provide sufficient proof that your alleged 10/18/2022 illness was sustained as a result of the performance of your duties as a Police Officer.

- You have failed to provide sufficient proof that a direct causal relationship exist[s] between your alleged 10/18/2022 illness and an incident occurring as a result of the performance of your duties as a Police Officer.

- You have failed to comply with the rules and procedures mandated in agreements between the City and the PBA concerning IOD claims, i.e., timeliness.

- You have failed to produce sufficient medical documentation showing a causal relationship between the alleged disability and a disability occurring as a result of the performance of your duties.

(Joint Exhibit 1)

A hearing was held on March 29, 2023 at Buffalo Police Headquarters in Buffalo, New York. Appellant was present for the hearing and was represented by legal counsel and other representatives. The parties were accorded a full and fair hearing, including the opportunity to present evidence and cross-examine witnesses. The record was closed at the conclusion of the hearing, and the record consists of the Hearing Transcript, Five (5) Joint Exhibits, seven (7) City Exhibit, and two (2) PBA Exhibits.

## ISSUES

1.    Whether Officer Hawkins followed procedures required by the IOD procedures Memorandum of Agreement and/or the IOD Hearing Agreement?

2.    Whether the City's denial of Officer Hawkin's application for benefits under General Municipal Law 207-c was in accordance with the statute?

## BACKGROUND FACTS

Appellant's IOD application was submitted on October 22, 2022.  (Joint Exhibit 1).  It identified the "Date of Injury" as "10/18/22."  (Id.).  In response to the circumstances of the injury, the application stated: "This has been an ongoing matter that started on May 2, 2022 with a Captain that is working with our unit. Unhealthy work environment."  (Id.).  The "nature of the injury," was specified as "stress/mental health."  (Id.).

On October 18, 2022, Appellant also transmitted the following P-73 to Commissioner Gramaglia:

> Due to circumstances within the past few months at my assignment (Behavior Health Team), my mental and physical health have taken a decline because of stress.  I've been ordered off of work by my doctor on 10/18/22.  Paper work from doctor submitted with P-73. (Id.).

4

The record further indicates that Appellant was seen at Erie County Medical Center Emergency Department on October 18, 2022. (Joint Exhibit 4). According to the ECMC report:

> Patient is a 41-year-old male Buffalo Police Officer, with no known past medical history, who presented to the emergency department for evaluation of stress, and difficulty sleeping. Patient states that in May 2022 he experienced racial slurs while at work. He states that this episode was very stressful, but it happened again approximately 2 weeks prior this caused even worsening stress and he is now experiencing insomnia. He has been speaking with a counselor though telehealth and has followed with his primary care provider. The primary care provider started him on trazodone to help with his difficulty sleeping. He states that this medication helps him fall asleep but he does not stay asleep and continues to wake up every morning at 4 AM. He also notes that he as lost significant amount of weight from the stress and he has occasional headaches. His primary care provider recently wrote him off work to help with the stress levels. He denies suicidal or homicidal ideations. He is presenting today as more of a formality. (Id.).

The report further stated:

> Arrival to the emergency department patient is well-appearing and in acute distress. He is calm, cooperative and A&O x3. He was mildly tachycardic in triage which may be secondary to his anxiety. Blood pressure is slightly elevated. Patient offers no current complaints. We discussed the patient's increase in work stress and ensure the patient had no thoughts of harming himself or others. He has a counselor which he will continue to see. Recommendation is for patient to follow-up primary care provider to see if he may require short course of anxiolytic or antidepressant medication to help him though this stressful time. Recommendation for medication, yoga, healthy eating, avoiding drugs, alcohol and tobacco, magnesium "calm" drink for headaches and sleeping, as well as melatonin. (Id.).

The "Primary Impression" stated in the report was "stress at work," and the

"Additional Impression" was "difficulty sleeping." (Id.).  The report further stated

that Appellant was "discharged from ED" and that his "condition" was "good."

(Id.).  Under "Modification of Activities," the report stated "[p]lease excuse patient

from work for medical reasons until medically cleared by occupational health."

(Id.).

Appellant was seen at Great Lakes Physician Services on October 24,

2022.  (Joint Exhibit 5).  Under "History of Present Illness," Great Lakes reported:

Patient words: This is a 41 y/o M BPO with PMHx sig for IOD of
Lumbar and thoracic strains, who has been working full duty
capacity until PCP took pt out of work for stress/anxiety/insomnia or
some combination of same.  Today he presents for F/U of ED visit
10/18/2022, for c/o insomnia and stress, "seen in E.D. as more of a
formality" per ED note.  He states that he has been having insomnia
and seeing PCP and counselor for same complaints as well as c/o
sharp C.P. intermittently, symptoms which he alleges is due to a
stress reaction at work over some "racial comments" which occurred
in May 2022.

Today, pt states that he is undergoing test (Echo) by PCP due to c/o
sharp c/p and SOB, also he states that he B.P. has been elevated,
as well as weight loss 15 pounds since May, he feels he can not
work under "hostile" and stressful conditions, due to "racial
comments" made by a Coworker as stated above.
He denies C/P or SOB today.

He continues that he is not sleeping but 3-4 hours per night due to
ruminating thoughts, despite taking Magnesium and Trazodone
before bed.

He denies SI/HI ideations.

The patient is a 41-year-old male.  (Id.).

Based on his statements, Great Lakes held Appellant from work from October 24, 2022 until November 18, 2022.  (Id.).

Appellant submitted medical documentation at the hearing.  One document was from Calm Seas Psychotherapy, located in Mount Sinai, New York.  (Union Exhibit 1).  In that document, Appellant's "[s]tart of treatment" was listed as February 6, 2023.  According to the Calm Seas report, Appellant was undergoing individual therapy on a weekly basis since February 6, 2023 and group therapy on a weekly basis since March 8, 2023.  The report noted that Appellant "presented to intake evaluation as Adjustment disorder, with anxiety."  (Id.).  This preliminary diagnosis, the report stated, was "based on the impression at the evaluation."  (Id.).  The report went on to state that, "[s]ince beginning individual therapy, client presented with symptoms of PTSD," which "diagnosis was changed on 3/06/2023 due to the following symptoms and criteria being met …" The report concluded that "the recommendation is not to return to duty at this time," and "[c]lient will continue to be seen weekly for PTSD treatment."  (Id.). Appellant, the report noted, "will be re-evaluated in 90 days."  (Id.).

The second document presented by Appellant was a March 9, 2023 "To Whom It May Concern" letter from Buffalo Medical Group.  (Union Exhibit 2).  In pertinent part, the letter stated:

> Brandon Hawkins is a patient in my practice.  He has recently been started on Amiodipine due to elevated blood pressures which began after what appears to be work related stress.  He has been seen seven times, starting 10/18/22, with medication starting 11/18, and a stress test after 1/17/23 visit due to chest pain.  The most recent visit

was 2/16/23, and he will continue to be followed closely with
concerns regarding his medical conditions related to stress. The
hypertension was not present prior to this time, and if not well
controlled has multiple morbidity and mortality concerns. (Id.).

Appellant testified at the hearing. According to Appellant, the Supervisor of the
Behavior Health Team, Captain Beyer, made derogatory comments about
African American men in the presence of some of Appellant's co-workers at a
time when Appellant was not present. When learning of Captain Beyer's
comments, Appellant testified, he became upset and did not report to work on
May 3, 2022. When he returned to work on May 4, according to Appellant, he
spoke to his immediate supervisors but believed that they "blew him off" and told
him that should not worry about Captain Beyer. On May 11, 2022, Appellant
testified, other officers called off work and Captain Beyer began to scream when
Appellant informed her that she should be apologizing about her comments.
Appellant testified that Captain Beyer did not apologize and told him that she had
just been repeating what her husband, a patrol lieutenant, had stated.

Appellant also testified that he cancelled a trip to attend a Crisis
Intervention training in Pittsburgh because he did not want to be around Captain
Beyer who was also going to the conference. When Appellant informed Captain
Beyer he would not be attending the conference, Appellant testified, she told him
he could not cancel at the last minute. According to Appellant, Captain Beyer
also informed Lieutenant Zipp of the Behavior Health Team that there would be
no more training for Appellant.

Appellant acknowledged on cross-examination that in July and August 2022 there were three deaths in his family, including a nephew who was stabbed to death.  Appellant also testified that after he informed Captain Beyer that he would not be attending the conference in Pittsburgh, she called him into her office and informed him that she had heard of the deaths in his family.  During their conversation, according to Appellant, Captain Beyer was "chuckling," and when she pressed Appellant as to why he would not be attending the conference, he informed her that he felt that she was a racist and did not deserve her position.  At that point, Appellant testified, Captain Beyer screamed at him and also made a face.

The following day, either on September 25 or 26, 2022, Appellant testified, in front of all members of the Behavior Health Team, Captain Beyer, while sitting on the desk of a black woman, read an email, and Appellant heard the term "nigga," which Beyer then repeated.  A Behavior Health Team employee, Appellant testified, then began to cry and was informed by Beyer that she, Beyer was not a racist and indeed had "colored people" in her family.

Appellant testified that at that point in time, the IAD investigation of Beyer, with which he cooperated, was ongoing.  The PBA, the Appellant testified, informed him that there was nothing they could do and told him he should go to EEOC.  In September and October 2022, Appellant testified, he was not sleeping or eating well and was experiencing high blood pressure.  Appellant testified he visited a physician on October 16, because he believed he had to "get out of the

situation."  Appellant also testified that went into work on October 18, 2022, filled out the IOD paperwork, and went to ECMC.   In Appellant's estimation, the harassment and bullying that he was experiencing at the hands of Captain Beyer caused him stress and rendered him unable to work.

## POSITION OF THE CITY

The City asserts that the instant appeal must be denied.  According to the City, Appellant failed to follow the timeliness rules contained in the procedure set forth in the parties' IOD MOA.  Specifically, the City focuses on Section 3 and its language that "[a]ny officer injured or taken sick shall seek immediate medical care at the locations as set forth in Exhibit B."  The City identifies past decisions of this Hearing Officer in which IOD appeals were denied on the ground that the Officer failed to "seek immediate medical care."  In the instant case, the City contends, the same conclusion must be reached because in the IOD application itself Appellant asserted that he was suffering from "mental health/stress," which had been" an ongoing matter that started on May, … [2022]."  The City notes that Appellant did not seek treatment at ECMC until October 18, 2022.

The City also claims that the appeal should be denied based on its contention that Appellant did not establish that his injury was directly caused by the performance of his duties.  Although Appellant claimed his blood pressure rose because of the conduct of Captain Beyer, the City asserts, the record establishes that Appellant had "a long history of very high blood pressure."

The City also identifies Appellant's testimony that, in the months of July or August of 2022, several of his family members passed away.  In the City's estimation, "the record clearly shows that if Hawkins is suffering, it is due to those deaths, and not the alleged stray comments of Captain Beyer." The City also identifies the ECMC report, when Appellant presented himself in the Emergency Department, he had "no acute distress" and offered "no current complaint." According to the City, it was Appellant and not ECMC who removed Appellant from work.  Thus, the City claims that Appellant's "own self-serving belief that he cannot work falls far short of his burden in this matter."

The City also argues that Appellant's injury "did not occur as a result of the performance of his duties."  The City notes that, although Appellant "alleged that on May 2, 2022, Captain Beyer made certain derogatory racial comments … he was not personally present for and that he heard third hand." The City maintains that "[a]t no point does Hawkins connect the dots as to how those third hand comments could possibly be viewed as being made within the context of the performance of his job duties as a police officer."

For all of the above reasons, the City maintains that the denial of benefits under General Municipal Law Section 207-c was in accord with the statute and the instant appeal must be denied by this Hearing Officer.

11

## POSITION OF THE APPELLANT

Appellant argues that the appeal should be upheld.  In setting forth Appellant's injury, it is indicated that Appellant's "injuries did not occur at a set point in time, but rather were compounded based upon the bullying and harassment he faced over a period of many months."  It was not until October 18, 2022, it is argued, that "the stress caused by Officer Hawkins' supervisor and work environment eventually became too much for him to bear."  Appellant, on that date, then complied with the IOD procedure and sought medical attention.

Appellant indicates and stresses the report from Occupational Health in on October 24, 2022.  As counsel puts it, it "simply cannot be overstated: *The City's own doctor* determined that Officer Hawkins had sustained an illness or injury which prevented him from being able to perform the duties of a police officer until at least November 18, 2022." (Emphasis in original). Counsel opines that is perhaps why the City "did not challenge the existence of those injuries."

Further, it is noted that the City did not send Appellant to any other examination or evaluation, "and without any conflicting medical opinions or information the City has absolutely no basis to challenge the existence of his injuries; accordingly, those injuries must be deemed as proven."  Appellant rejects any argument by the City based on the fact that Appellant may have had elevated blood pressure.  Thus, it is argued that "the claimed injury in this case is not 'high blood pressure;' but that high blood pressure is merely a side effect of the mental and emotional injuries sustained in the line of duty."

Appellant also argues that the IOD application was timely asserted.  The City's claim that Appellant sustained injuries on May 2, 2022, it is argued, should be rejected because "Officer Hawkins did not suffer a physical injury like a torn ligament, or a gunshot wound, to which a specific date and time of injury can be ascribed." Counsel likens Appellant's injury to a "stress injury – a cumulative injury which may have begun in May of 2022, but which didn't become debilitating and prevent him from being able to work until October 18, 2022."

It is also claimed that the City's contention that Appellant did not suffer an injury in the line of duty must be considered without merit.  As counsel views it, "Officer Hawkins testified clearly and without contradiction or challenge that the racially-based bullying and harassment he suffered at the hands of his supervisor … was the only such bullying and harassment to which he was subjected between May and October of 2022."   Appellant testified that "he took many days off of work to avoid interacting with Captain Beyer," but "was unable to escape this treatment."

Additionally, Appellant maintains that the City is incorrect when it claims that Appellant's injury was not caused by the performance of his duties.  It is argued that Appellant "testified without contradiction that the mental and emotional injuries which eventually caused him to be unable to work as a police officer were the result of being harassed and bullied by his work supervisor while working as a Buffalo Police Officer."

Finally, Appellant contends that the City's argument that there is no medical evidence in the record to connect Appellant's injuries to the conduct of his supervisor should be rejected. Appellant's "injuries," it is argued, "are mental and emotional; these are not the types of diagnoses which are readily apparent upon visual inspection, and in fact rely to a great extent upon the self-report of the injured party." The record herein "contains more than ample evidence of physical manifestations of those mental or emotional injuries to corroborate Officer Hawkins' self-reports."

Accordingly, for all of the reasons cited above, Appellant maintains that he has been wrongfully denied the benefits of General Municipal Law Section 207-c and requests that the City rescind its earlier determination and grant Appellant the requested IOD status.

## FINDINGS

The City raises the threshold contention that the instant appeal must be dismissed because Appellant did not follow the parties' IOD MOA in that he did not comply with the requirement in Section 3 of the MOA to "seek immediate medical care."  Essentially, the City bases this argument on the fact that Appellant, in his IOD application, stated that the "mental health/stress" that formed the basis of his IOD application had "been an ongoing matter that started on May, 2022."  By waiting until October 18, 2022, to seek medical care at ECMC, Appellant, the City argues, did not seek "immediate" medical care.

In instances where the Hearing Officer has upheld the City's denial of IOD applications on a lack of compliance with the Officer's responsibility to seek "immediate medical care," the record showed a distinct incident that the Officer claimed gave rise to the injury (e.g., falling in pursuit of a suspect or slamming hand in a door) and the Officer waited more than a day before seeking immediate medical care. In the instant appeal, however, Appellant alleges an ongoing work environment that finally reached its climax on October 18, 2022, and it was not until that date when he was unable to carry on his duties.

The Hearing Officer finds Appellant's situation distinguishable from those where a lack of timeliness in seeking medical care resulted in the dismissal of the appeal. Accordingly, the Hearing Officer does not accept the City's threshold contention that the instant appeal must be denied based on Appellant's untimeliness in seeking medical review.

The Hearing Officer thus focuses on the second issue, namely, whether the City's denial of Appellant's IOD application was in accord with Section 207-c of the General Municipal Law. Under GML Section 207-c, an officer is entitled to IOD status when there is "a direct causal relationship between [Appellant's] job duties and the resulting illness or injury." *White v. County of Cortland*, 97 NY2d 336 (2002). The existence of the injury that an officer claims prevents the officer from performing the duties of their position, standing by itself, does not satisfy the causal relationship requirement, even if the officer shows symptoms of the illness while at work. See *Depoalo v. City of Schenectady*, 85 NY2d 527 (1995; City of

Buffalo IOD Hearing (Baranski, 2014).  The Great Lakes report of Appellant's visit on October 24, 2022 and the determination that Appellant should be held off of work does no more than establish the existence of a physical condition that prevented Appellant from working and not the causal relationship required for IOD status.

In determining whether a causal relationship has been established, the Hearing Officer notes that the medical evidence produced by the Appellant in addition to the Great Lakes report in evidence does not establish a causal relationship.  The March 9, 2023 report from Calm Seas Psychotherapy identifies Appellant's physical condition but does not contain evidence of a causal relationship (Union Exhibit 1), nor does the "To Whom It May Concern" letter from Buffalo Medical Group of March 9, 2023 establish a causal connection. (Union Exhibit 2).  Moreover, the record evidence shows that in the interval between May and October 2022, when Appellant testified his symptoms were growing worse, Appellant suffered the loss of close family members, which could reasonably be considered stressors consistent with his symptoms.  Further, the Hearing Officer notes that Appellant's high blood pressure, which could be considered a symptom of his stress, seems to be part of an ongoing physical condition Appellant has experienced prior to 2022.  This observation is supported by a high blood pressure reading contained in a Great Lakes report on January 26, 2021 and an earlier record from ECMC of Appellant's visit on August 28, 2015 where Appellant's high blood pressure is reported.

Based on the Hearing Officer's entire review of the record, he is unable to conclude, therefore, that Appellant's claimed injury is causally related to the performance of his duties as a Buffalo Police Officer.  This finding is sufficient to resolve the instant appeal and negates the necessity of the Hearing Officer considering any remaining arguments of the City.

Accordingly, and based on the foregoing, I find and make the following:

### DETERMINATION

For the reasons set forth, the Hearing Officer finds that the City's denial of Appellant's application for benefits under Section 207-c of the General Municipal Law was in accordance with the statute and was otherwise reasonable.

STATE OF NEW YORK )
COUNTY OF ALBANY   ) ss:

I, Jeffrey M. Selchick, do hereby affirm upon my oath as Hearing Officer that I am the individual described herein and who executed this Instrument, which is my Findings and Determination.

Dated:  May 30, 2023
            Albany, New York

JEFFREY M. SELCHICK, ESQ.
Hearing Officer