**Deleted:** Case 1:22-cv-00905-WMS-HKS  Document 1  Filed 11/21/22  Page 1 of 21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------X

BRANDON HAWKINS,
KATELYNN BOLDEN, and
ERICA SEYMOUR,

**Formatted:** Font color: Red

**PROPOSED AMENDED COMPLAINT**

                        Plaintiffs,          Civil Action No. 22-905

                        v.

CITY OF BUFFALO, and CAPTAIN AMBER BEYER,

**Deleted:** BUFFALO POLICE DEPARTMENT,

                        Defendants

-------------------------------------------X

      Plaintiffs Police Officer Brandon Hawkins, Police Officer Katelynn Bolden, and Clinician Erica Seymour, by and through their attorney, Prathima Reddy, as and for their Amended Complaint, allege as follows:

**Deleted:** Nathan McMurray of Advocates for Justice, Chartered Attorneys…

**Formatted:** Font color: Red

**INTRODUCTION**

      1.     Plaintiffs bring this action charging that Defendants violated their rights pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e) et seq.), and New York State Human Rights Law, providing for relief from Defendants unlawful discrimination, for retaliation against Plaintiffs for engaging in protected activity by formally and informally reporting unlawful discrimination, and creation of a hostile work environment which Plaintiffs were forced to endure.

      2.     This complaint seeks to recover monetary damages, both accrued and prospective, as well as attorney fees pursuant to 42 U.S.C. § 1988.

**JURISDICTION**

3.      The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000(e) et seq., and the doctrine of pendant jurisdiction.

4.      The Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

**PARTIES**

5.      Police Officer Brandon Hawkins is a 15-year veteran of the Buffalo Police Department. His business address is 68 Court Street, Buffalo, NY 14202. Plaintiff Officer Hawkins is African American.

6.      Officer Katelynn Bolden is an eight-year veteran of the Buffalo Police department. Her business address is 68 Court Street, Buffalo, NY 14202. Plaintiff Officer Bolden is African American.

7.      Clinician Erica Seymour is employed by Endeavor, which has a contract to provide mental health services for the Buffalo Police Department (together, the "Plaintiffs"). Her business address is 68 Court Street, Buffalo, NY 14202. Plaintiff Clinician Seymour is African American. Her office was located within the BPD headquarters, and she worked daily alongside Behavior Health officers and community police officers. She was given a police placard to use in her personal car while she was working.  She also travelled in a BPD vehicle with two (2) BPD police officers.  She had access to police databases and reviewed cases alongside BPD officers. She had regular contact with the lieutenants and captains of the BPD, who made decisions about my assignments and job responsibilities.

8.      The City of Buffalo is a municipal corporation in Erie County, New York. It has a principal place of business at 65 Niagara Square, Buffalo, NY 14202.

2

.

9.      The Buffalo Police Department ("BPD") is an Executive Department of the City of

Buffalo. Its headquarters are at 68 Court Street, Buffalo, NY 14202.

10.     Captain Amber Beyer is a Captain employed by BPD. Her business address is 68

Court Street, Buffalo, NY 14202.

Deleted: *<object>*

## FACTUAL ALLEGATIONS

11.    Plaintiffs all work with BPD's Behavioral Health Team where they serve under the leadership of Defendant Captain Beyer.

12.    There are approximately 10 employees working for BPD's Behavioral Health Team.

13.    The employees who work for the Behavioral Health Team pursuant to the BPD's contract with Endeavor receive instruction and training from BPD supervisors, are integrated team employees, their relationship with BPD is continuing, they have set hours of work, their work is full time, they work on BPD's premises, the work is directed by BPD, the work is accomplished with BPD tools and material, and BPD can direct their termination.

14.    All employees of the Behavioral Health Team typically work together in one room with their superior, Defendant Captain Beyers.

15.    On May 2, 2022, Officer Jason Wagstaff showed a viral video to Defendant Captain Beyer of an incident in which two White police officers in a different jurisdiction racially profiled and pulled over a Black officer (who was wearing his uniform).

16.    Defendant Captain Beyer watched the shocking video and then—in view of the entire room of Officers and clinicians—stated she could see "both sides" of the incident.

17.    Plaintiff Officer Bolden and Officer Wagstaff were confused and challenged Defendant Captain Beyer stating that the video clearly demonstrated racist intent or motivation by the White officers in the video.

18.    Defendant Captain Beyer then ranted for approximately 20 minutes, making the following statements as well as other statements that demonstrate her own racial animus:

- Black men cheat (cheat on their wives) more than White men; looked towards Clinician Jamie Francis (who is White) for confirmation, which was not given, asking "Right Jamie?"

3

Deleted: <*object*>

- All the Black police officers she knows are unfaithful; she stated that the entire BPD knew it, and that it was a running joke at the BPD

- If she saw a Black man in her neighborhood, she would be suspicious (upon information and belief she lives in Wheatfield, a predominately White city, far outside of Buffalo, NY).

- White Officers get PTSD from working in Black neighborhoods—like the East Side of Buffalo—but Black officers do not because they are used to violence and Black people commit more violent crime than White people.

- Officer Wagstaff and Plaintiff Officer Bolden should try hard to understand why people are racist, and that the criminality of Black people justified some racism.

- If a White person is robbed by a Black person that it would be logical for that White person to have racist views.

19.     Plaintiff Officer Bolden responded that she had a White man break into her car, but she did not assume that all White men were thieves.

20.     Defendant Captain Beyer continued to rant. There was an awkward atmosphere in the room, and eventually Defendant Captain Beyer walked out. When she left the room was in silence until Officer Wagstaff stated the obvious, "That was awkward."

21.     In the days that followed, Plaintiffs and other Officers texted each other expressing shock at what had happened. Eventually, one of the officers raised a complaint with Internal Affairs at BPD.

22.     After being informed about the May 2nd incident, Ms. Seymour raised her concerns with her direct supervisor, Jenna Ward, an Endeavor supervisor ("Ms. Ward"). Despite these complaints, no effective steps were taken to address the hostile work environment created by Captain Beyer at BPD.

23.     Defendant Captain Beyer, however, seemed determined to interact with Plaintiff Officer Hawkins and completely unrepentant about her behavior.

24.     On May 11, 2022, Captain Beyer entered the Behavioral Health Team room screaming about the ongoing investigation of her by Internal Affairs.

Deleted: she

4

25.    Officer Wagstaff and Plaintiff Officer Bolden were not at work that day but Defendant Captain Beyer attacked, them calling them "liars" and "gossips."

26.    On Monday, May 9, 2022, Officer Bolden had filed a complaint with Internal Affairs by making a written statement.

27.    Captain Beyer routinely and consistently made racially charged and offensive remarks that created a hostile and unprofessional work environment.  She often referred to African Americans as "the blacks" which Officer Bolden found offensive, stated  black people commit more crimes, tend to rob things and would use phrases like "pimp limp" and "cracker", all of which Officer Bolden found inappropriate and discriminatory.

5

Deleted: *<object>*

28.     Defendant Captain Beyer expressed her belief that the officers should not have utilized the proper channels to report discrimination, telling everyone in attendance that they should have come to her directly.

29.     Defendant Captain Beyer indicated a complete lack of remorse, saying she did nothing wrong.

30.     Defendant Captain Beyer attempted to undermine the legitimacy of the officers' complaints against her, stating that they reported her to the most "toxic" person in the entire BPD, Lieutenant Zipp.

31.     Lieutenant Zipp supervises the Behavior Health Team and officers followed the proper protocol and chain of command when they reported Defendant Captain Beyer's conduct to him.

32.     Lieutenant Zipp, whose office is beside the Behavioral Health Team, heard the commotion and walked over to confront Defendant Captain Beyer, explaining to her that she should not be talking about an ongoing investigation.

33.     Defendant Captain Beyer screamed at Lieutenant Zipp, telling him to "get out." Lieutenant Zipp left.

34.     Then Plaintiff Officer Hawkins started to communicate to Defendant Captain Beyer that her screaming and defense of her hateful comments was wrong. He explained that she was offending people and hurting them.

35.     Defendant Captain Beyer responded that she was misunderstood. Her demeanor was hostile.

36.     Hearing the commotion, Lieutenant Zipp emerged from his office and told Defendant Captain Beyer that she should not be "talking about this" because there was an ongoing investigation.

Deleted: Case 1:22-cv-00905-WMS-HKS  Document 1
Filed 11/21/22  Page 7 of 21

37.    Plaintiff Officer Hawkins suggested that instead of complaining about an internal investigation Defendant Captain Beyer should apologize. He also told her directly that he was one of the officers who complained to Lieutenant Zipp because her actions made him personally uncomfortable.

38.    Defendant Captain Beyer scoffed, saying that nothing would come of the investigation.

39.    Plaintiff Officer Hawkins (having worked with Defendant Captain Beyer for years, even since before their time at the BPD when they both worked together at the Transportation Security Administration) was extremely troubled by Defendant Captains Beyer's racist confessional and subsequent screaming defense of her words.

40.    Plaintiff Officer Hawkins expressed his concerns to coworkers. He even asked Lieutenant Zipp to prevent Defendant Captain Beyer from addressing the members of the Behavioral Health Team until the investigation was complete.

41.    Lieutenant Zipp explained he had no power to stop her, so Plaintiff Officer Hawkins started to use vacation time to avoid directly working with Defendant Captain Beyer.

42.    Despite his efforts to avoid her, Defendant Captain Beyer continued to target Officer Hawkins following their May 11, 2022 interaction.

43.    For example, he tried to avoid staying in a hotel where Defendant Captain Beyer was also staying when she attended a Crisis Intervention Team ("CIT") Conference. Plaintiff Officer Hawkins asked to stay at a separate hotel to avoid her. He was never granted his request for separate accommodations, and therefore did not attend the CIT Conference.

44.    On August 25, 2022, Defendant Captain Beyer texted Plaintiff Officer Hawkins regarding the conference. In the texts, she confronted him about why he was not in attendance,

7

Deleted: *<object>*

pressuring him to come, and ultimately notified Lieutenant Zipp that Plaintiff Officer Hawkins would no longer be permitted to attend future conferences.

45.     Following a meeting with an opioid awareness group called NY Matters, on September 28, 2022, Defendant Captain Beyer confronted Plaintiff Officer Hawkins directly again. She insisted on giving Plaintiff Officer Hawkins a pamphlet from the conference. She then she ordered Plaintiff Officer Hawkins to speak with her in her office, which is located on opposite side of the floor.

46.     The meeting started cordial, but strange, because Defendant Captain Beyer started asking about death in his family. Suddenly, she changed topics and asked directly, "Why didn't you go to the CIT conference?" and "Tell me to my face."

47.     Plaintiff Officer Hawkins answered directly, "I do not feel comfortable around you. I think what you said is racist."

48.     Defendant Captain Beyer immediately shouted, "You weren't even there," referring to her comments from May 2, 2022.

49.     Defendant Captain Beyer told him to get over it because everyone else had. In fact, "everyone else" had not "gotten over it," as Defendant Captain Beyer claimed.

50.     Plaintiff Officer Hawkins explained that everyone was still upset and that he could not get over it so easily because he could not "wake up and not be Black." Further he said that he was not afraid to stand up to her and tell her what she had done was wrong, even if she outranked him.

51.     The next day, on September 29, 2022, Defendant Captain Beyer increased her impropriate behavior. She emerged with a printout of a Facebook post by a Buffalo citizen who was mentally unwell and who she wanted the team to check on. She began to read the Facebook post in dramatic fashion, repeatedly yelling the word "Niggas." She was leaning on Plaintiff

Officer Bolden's desk beside Plaintiff Officer Hawkins and Officer Wagstaff (where three-quarters of the Black officers from that team sit).

52. The entire Behavioral Health Team was disturbed by this. Plaintiff Officer Bolden spoke out, "Can you please say the 'N Word' instead?"

53. Defendant Captain Beyer then said with sarcasm, "I'm just reading the post."

54. Of note, she never read a post like that (or any other) before the team before.

55. Officer Bolden I filed a complaint to with Internal Affairs regarding this misconduct. She was shocked at the furthering of a hostile environment and left in disgust, anger and Disbelief.

56. On or about October 11, 2022, Officer Bolden was injured on duty (IOD), and was out of work which provided a reprieve from Captain Beyer's misconduct. Since May and despite her complaints about her conduct, BPD took no action to address or remediate the discrimination. It was known that she had been aware of the complaints made against her since she started to refer to her as a liar and a gossip for having made a report. Since BPD was ignoring our serious allegations of discrimination, Officer Bolden decided to take legal action.

57. Regarding the September 29,2022 incident, Plaintiff Seymour left the room in tears, feeling intimidated by Defendant Captain Beyer's open disregard for her subordinates and unprofessional behavior. She reported this incident to a supervisor and also made a formal complaint to Internal Affairs at BPD. This incident caused her immense emotional distress, prompting her e to immediately file a complaint with Ms. Ward also. Furthermore, she requested a meeting with the CEO of Endeavor to address the matter. Following this, an independent off-site meeting was arranged, which was followed by a group meeting.

58. In October of 2022, Plaintiff Seymour requested that she be allowed to work part time in an effort to avoid Captain Beyer because of the stress caused by the hostile work environment. While this request was granted, she was later terminated by Defendant City when

9

she filed this lawsuit.

59.     Plaintiff Officer Hawkins was forced to go out on sick leave as a result of the emotional distress he suffers from the hostile work environment, and because he fears of retaliation from Defendant Captain Beyer, her associates, and Defendant Captain Beyer's spouse, who is also in a supervisor role at the BPD.

60.     He is facing physical stress as well, unable to sleep and suffering from an accelerated heart rate and worsened blood pressure. Despite medical recommendations by the BPD doctor and his own personal doctor, the BPD has denied his request for continued leave and refused to provide an explanation.

61.     Plaintiff Officer Bolden is extremely distressed by these events and concerned about returning to a changed work environment where racist behavior is tolerated.

62.     Indeed, Defendant Captain Beyer has fostered a hostile work environment for African American employees in several ways.

63.     On February 14, 2023, Officer Bolden suffered a severe panic attack at work due to the unabated hostile environment at work and was taken to ECMC for medical attention, where she discovered she was pregnant. Concerned about her health and pregnancy and having experienced two prior miscarriages, she took unpaid FMLA leave. On May 17, 2023, her unpaid FMLA leave ended, leaving her financially strained and emotionally distressed. In July 2023, she began treatment with psychologist Emily Davison at Suburban Psychiatric Associates. She was diagnosed with anxiety, depression, and adjustment disorder and prescribed Zoloft to manage panic attacks due to my working environment. On January 10, 2024, she returned to work on light duty but suffered a panic attack during her shift. Due to prior dismissiveness from supervisors, she did not report it. On February 15, 2024, while on light duty, Captain Beyer assigned tasks typically handled by lieutenants, which she completed out of fear of retaliation. On July 30, 2024, Officer Bolden reported for light duty, but her lieutenants claimed no knowledge of her status.

.

Despite resubmitting proper documentation, she was marked AWOL for July 30, 2024, and lost a day's pay.

.

64.    Overtime is assigned by seniority. However, Defendant Captain Beyer and another superior officer repeatedly permitted a White officer with the least seniority on the team to sign-up for trainings and conferences requiring overtime hours without first offering that overtime to the African American officers with greater seniority. Then, Defendant Captain Beyer notified the Team that she would cut off all overtime approval unless all overtime hours were shared equally with the White officer with the least seniority. This act was discriminatory and violates the officers collectively bargained rights. White employees with lower seniority routinely received overtime.

65.    Defendant Captain Beyer is still at work, seemingly unaffected by these events.

66.    Plaintiffs filed a Charge of Discrimination with the Equal Employment Opportunity Commission of the United States ("EEOC") and requested that the EEOC issue a "Right to Sue" letter.

67.    Plaintiffs filed this federal lawsuit on November 21, 2022.

68.    In January 2024, Officer Hawkins was cleared to return to work on light duty. While light-duty officers typically report to headquarters for minimal assignments, Officer Bolden and Officer Hawkins were instructed to work at the BHT station under Captain Beyer's supervision. Unlike others on light duty, they were required to perform tasks beyond our limitations, contributing to further stress.

69.    Despite ongoing medical and union intervention, Captain Beyer's behavior persisted. In March 2024, Officer Hawkins was assigned supervisory-level tasks beyond my position. When he raised concerns, he was suspended for "insubordination."

70.    According to Officer Hawkins, there is a culture of racism at BPD that persists to this day because of Captain Beyer's unabated misconduct.  On January 8, 2025, during an overtime assignment with his supervisor, Officer Hawkins responded to a call involving an individual in a manic state. The individual repeatedly called him "Buckwheat," a racial slur, in the presence of his white colleagues. Despite his objections, his supervisor and colleagues failed to address the harassment and in fact started to

12

use the term as well. This incident was captured on his body camera.

71.     The harassment, retaliation, and hostile work environment created by Captain Beyer and perpetuated within BPD has severely impacted the health, career, and emotional well-being of Officer Hawkins. The denial of his IOD claim and lack of meaningful interventions have left his in a state of despair and uncertainty.

72.

**AS AND FOR A FIRST CLAIM FOR**
**RACE DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

73.     Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

74.     Plaintiffs allege that Defendants City of Buffalo and Buffalo Police Department, by and through their agents, engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment based on Plaintiffs' race.

75.     As part of the pattern and practice of employment discrimination, Defendants City of Buffalo and Buffalo Police Department treated Plaintiffs in a manner indicative of race discrimination.

76.     Defendants City of Buffalo and Buffalo Police Department knew or should have known about this race discrimination in the workplace.

13

Deleted: <*object*>

77.     Defendants City of Buffalo and Buffalo Police Department failed and refused to take appropriate action to end the discriminatory treatment and conditions which Plaintiffs were subjected to, which failure to act was motivated by race and was a demonstration of bad faith.

78.     As a result of the discriminatory acts of Defendants City of Buffalo and Buffalo Police Department under color of law through its agents, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

79.     Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

Deleted: in no event less than $15,000,00

Deleted: 0.00.

**AS AND FOR A SECOND CLAIM FOR
RETALIATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

80.     Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

81.     Plaintiffs allege that Defendants City of Buffalo and Buffalo Police Department, by and through their agents, engaged in retaliation against Plaintiffs as a result of their lawful complaints, both formal and informal, about discriminatory treatment in their workplace.

82.     Defendants City of Buffalo and Buffalo Police Department knew or should have known about this retaliatory conduct.

83.     Defendants City of Buffalo and Buffalo Police Department failed and refused to take appropriate action to end the retaliation which Plaintiffs were subjected to, which failure to act was motivated by race and was a demonstration of bad faith.

84.     As a result of the retaliatory acts of Defendants City of Buffalo and Buffalo Police Department under color of law through its agents, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

14

**Deleted:** *<object>*

85.    Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

**Deleted:** , in no event less than $15,000,000.00.

### AS AND FOR A THIRD CLAIM FOR
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF
### <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964</u>

86.    Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

87.    Plaintiffs allege that Defendants City of Buffalo and Buffalo Police Department, by and through their agents, created and condoned a hostile work environment against Plaintiffs.

88.    As a result of the severe and pervasive discriminatory and retaliatory acts of that Defendants City of Buffalo and Buffalo Police Department, by and through its agents under color of law, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

89.    Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

**Deleted:** , in no event less than $15,000,000.00.

### AS AND FOR A FOURTH CLAIM FOR
### RACE DISCRIMINATION IN VIOLATION OF
### <u>NEW YORK STATE EXECUTIVE LAW § 296</u>

90.    Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

91.    Plaintiffs allege that Defendants City of Buffalo and Buffalo Police Department, by and through their agents, engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment based on Plaintiffs' race.

92.    Plaintiffs allege that as a direct and proximate cause of the unlawful employment discrimination practices of Defendants City of Buffalo and Buffalo Police Department, they have suffered the indignity of race discrimination and great humiliation.

15

93.    As a result of the severe and pervasive discriminatory and retaliatory acts of that Defendants City of Buffalo and Buffalo Police Department, by and through its agents under color of law, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

94.    Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

**AS AND FOR A FIFTH CLAIM FOR
HOSTILE WORK ENVIRONMENT IN VIOLATION OF
NEW YORK STATE EXECUTIVE LAW § 296**

95.    Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

96.    Plaintiffs allege that Defendants City of Buffalo and Buffalo Police Department, by and through their agents, created and condoned a hostile work environment against Plaintiffs.

97.    Plaintiffs allege that based on the foregoing Defendants City of Buffalo and Buffalo Police Department, by and through their agents, created, condoned and tolerated a hostile work environment which negatively affected the terms and conditions of their employment

98.    As a result, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

99.    Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

**AS AND FOR A SIXTH CLAIM FOR
RACE DISCRIMINATION IN VIOLATION OF
42 U.S.C. SECTION 1981 and 42 U.S.C. SECTION 1983**

100.    Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

Deleted: <object>

Deleted: , in no event less than $15,000,000.00.

Deleted: l, in no event less than $15,000,000.00

101.    Plaintiffs allege that Defendants City of Buffalo, Captain Beyer and Buffalo Police Department, by and through their agents, engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment based on Plaintiffs' race.

102.    As part of the pattern and practice of employment discrimination, Defendants City of Buffalo and Buffalo Police Department treated Plaintiffs in a manner indicative of race discrimination.

103.    Defendants City of Buffalo and Buffalo Police Department knew or should have known about this race discrimination in the workplace.

104.    Defendants City of Buffalo and Buffalo Police Department failed and refused to take appropriate action to end the discriminatory treatment and conditions which Plaintiffs were subjected to, which failure to act was motivated by race and was a demonstration of bad faith.

105.    As a result of the discriminatory acts of Defendants City of Buffalo and Buffalo Police Department under color of law through its agents, Plaintiffs suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

106.    Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial.

Deleted: <*object*>

**AS AND FOR A SEVENTH CLAIM**
**PURSUANT TO 42 U.S.C. 1983 FOR**
**EQUAL PROTECTION VIOLATIONS**

Deleted: NINTH

107.    Plaintiffs repeat and reallege the facts alleged in above paragraphs and incorporate them by reference as set forth fully herein.

108.    All of the acts and conduct of Defendants City of Buffalo, Captain Beyer and Buffalo Police Department, by and through their agents, herein stated were done under color of law while in the performance of their duties as City of Buffalo and Buffalo Police Department employees.

109.    The facts and circumstances cited above are in violation of Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause of the United States Constitution to be free from discrimination, harassment and retaliation in their employment Defendants City of Buffalo and Buffalo Police Department.

110.    Defendants failed to properly investigate and address the allegations made by Plaintiff of discrimination, hostile work environment, and retaliation as evidenced by, among other things, derogatory and racially motivated actions, slurs and commentary and retaliation and harassment by Defendants against Plaintiffs for lawfully speaking out against Defendants.

111.    Defendants' failure to take any remedial and/or corrective action when specifically called upon to address prevalent discrimination, retaliation and hostile conditions all under the control of Defendant Captain Beyer, which she knew or should have known the existence of, caused Plaintiffs to sustain extensive economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

112.    Because of these actions, Defendants jointly and severally deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. 1983 and under New York State Human Rights Law.

18

Deleted: <*object*>

113. Based on the foregoing, each Plaintiff has been damaged at an amount to be determined at trial, in no event less than $15,000,000.00.

**JURY TRIAL**

Plaintiffs demand a trial by jury on all issues that are so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this honorable Court grant the following relief:

1. Declare the aforementioned actions for Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution, and the New York State Human Rights law;

2. As and for Plaintiffs' First Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: in no event less than $15,000,000.00;

3. As and for Plaintiffs' Second Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: in no event less than $15,000,000.00;

4. As and for Plaintiffs' Third Claim, grant each Plaintiff an amount to be determined at trial,

Deleted: in no event less than $15,000,000.00;

5. As and for Plaintiffs' Fourth Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: in no event less than $15,000,000.00;

6. As and for Plaintiffs' Fifth Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: , in no event less than $15,000,000.00;

7. As and for Plaintiffs' Sixth Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: in no event less than $15,000,000.00;

8. As and for Plaintiffs' Seventh Claim, grant each Plaintiff an amount to be determined at trial;

Deleted: in no event less than $15,000,000.00;

.

9.      As and for Plaintiffs' Eighth Claim, grant each Plaintiff an amount to be determined at trial.

10.     As and for Plaintiffs' Ninth Claim, grant each Plaintiff an amount to be determined at trial.

11.     Grant Plaintiffs all costs for this action, including reasonable attorney fees; and

12.     Grant Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
      January 22, 2025

*Attorneys for Plaintiff*

By:_____ /s/ *Prathima Reddy*
       Prathima Reddy
       The Reddy Law Firm
       455 Linwood Avenue
       Buffalo, NY 14209

20

---

**Deleted:** *<object>*

**Deleted:** in no event less than $15,000,000.00;

**Deleted:** in no event less than $15,000,000.00;

**Deleted:** November

**Deleted:** 18

**Deleted:** 2

**Formatted:** Indent: Hanging:  0.07"

**Deleted:** ADVOCATES FOR JUSTICE, CHARTERED ATTORNEYS¶

**Deleted:** *Nathan D. McMurray*

**Deleted:** Nathan McMurray

**Deleted:** Laine Alida Armstrong¶

**Deleted:** 225 Broadway, Suite 225 New York, New York 10007¶

**Formatted:** Indent: Left:  4.39", First line:  0.15", Right:  0.49"

**Deleted:** (212) 285-1400/(917) 923-8136¶
nmcmurray@advocatesny.com laine@advocatesny.com