UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDON HAWKINS, et al.,

Plaintiffs,

Civ. No.: 1:22-cv-00905-MAV-HKS

v.

CITY OF BUFFALO, et al.,

Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs POLICE OFFICER BRANDON HAWKINS (hereinafter "Officer Hawkins"), POLICE OFFICER KATELYNN BOLDEN (hereinafter "Officer Bolden"), and ERICA SEYMOUR (hereinafter "Ms. Seymour") (collectively "Plaintiffs") respectfully submit this memorandum in opposition to the Motion to Dismiss of Defendants CITY OF BUFFALO (hereinafter "City") and CAPTAIN AMBER BEYER (hereinafter "Captain Beyer") (collectively "Defendants") seeking dismissal of Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion should be denied in its entirety.

**FACTS AND PROCEDURAL HISTORY**

On June 17, 2026, the Court issued a Decision and Order granting Plaintiffs' motion to amend the complaint and to re-open discovery and denying as moot Defendants' prior motion for judgment on the pleadings, except insofar as the Buffalo Police Department was dismissed as a party. The Order further provided that Defendants would have 30 days from timely service of the Amended Complaint to file a responsive pleading, with Plaintiffs' opposition due 15 days

thereafter and any reply within 7 days. Although the Order cited Local Rule 15(c) in setting Defendants' time to respond, it did not set an express deadline by which Plaintiffs were required to file the Amended Complaint. ECF No. 51 at 7–8.

Because the Order set deadlines for the parties' subsequent filings but not for the Amended Complaint, Plaintiffs' counsel anticipated that the Court would issue a further order setting the filing date. When no such order issued, counsel's office contacted the Clerk's Office for clarification. On or about July 8, 2026, the Clerk advised that, absent a different deadline set by the Court, Local Rule 15(c) applies and requires the moving party to file and serve the amended pleading within fourteen (14) days of entry of the order granting leave to amend. Reddy Decl. ¶¶ 7–8.

Plaintiffs filed the Amended Complaint on July 22, 2026. Thereafter, Defendants twice requested by email, and Plaintiffs consented to, extensions of Defendants' time to respond to the Amended Complaint: first through September 21, 2026, and then through October 23, 2026. Reddy Decl. ¶ 10. In neither request did Defendants object to the timing of the Amended Complaint, and they never moved to strike it. Instead, Defendants filed the instant Motion to Dismiss on October 15, 2026, nearly three months after service of the Amended Complaint.

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED BASED ON A SLIGHT, NON-PREJUDICIAL DELAY UNDER LOCAL RULE 15(c)

Defendants' first argument is that the Amended Complaint, filed on July 22, 2026, should be dismissed under Local Rule 15(c), which provides a fourteen-day filing period unless the order granting leave sets a different deadline. ECF No. 57 at 5. That argument provides no basis for dismissal. The June 17, 2026 Order set specific deadlines for each of the parties' subsequent

filings—Defendants' response, Plaintiffs' opposition, and any reply—but did not set a deadline for filing the Amended Complaint, referencing Local Rule 15(c) only in connection with Defendants' time to respond. ECF No. 51 at 7–8. Plaintiffs reasonably anticipated that the Court would set the filing date, and while awaiting that order, counsel overlooked the fourteen-day period under Local Rule 15(c). When no further order issued, counsel's office sought guidance from the Clerk's Office and filed the Amended Complaint thereafter. Reddy Decl. ¶¶ 7–9. Counsel regrets the oversight and respectfully apologizes to the Court. Plaintiffs acted in good faith throughout, and nothing about the timing was willful or intended to gain any tactical advantage.

Defendants concede that district courts have discretion to excuse noncompliance with their local rules. ECF No. 57 at 5 & n.2 (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000); *Popat v. Levy*, 328 F. Supp. 3d 106, 136–37 (W.D.N.Y. 2018)); *see also Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991). Every relevant consideration favors exercising that discretion here. In assessing excusable neglect, courts consider the danger of prejudice to the opposing party, the length of the delay and its potential impact on the proceedings, the reason for the delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The delay was slight; it did not affect any Court-ordered deadline; Plaintiffs acted in good faith; and, as shown below, Defendants suffered no prejudice.

Defendants suffered no prejudice. They received the Amended Complaint on July 22, 2026, and thereafter twice sought and obtained extensions of their time to respond—first through September 21, 2026, and then through October 23, 2026. In total, Defendants received roughly nine additional weeks beyond the response period set by the Court—far longer than the slight

delay of which they now complain. In neither extension request did Defendants object to the timing of the Amended Complaint, and they never moved to strike it. Nor do Defendants identify any unavailable witness, lost evidence, impaired defense, or other prejudice resulting from the timing of the filing. To the contrary, Defendants responded to the amended pleading on the merits. ECF No. 57 at 5–9.

Defendants' own conduct demonstrates that the filing date did not affect their ability to litigate this case. Federal courts consistently favor resolving disputes on their merits rather than through procedural technicalities. That principle carries particular force in civil rights actions, where dismissal based on a non-prejudicial filing defect would undermine the preference for adjudication of claims on their substantive merits.

The sanction sought by Defendants is especially inappropriate because the Court itself granted leave to file the Amended Complaint. Defendants had notice of the proposed amendments, the Court reviewed those amendments, and the Court authorized Plaintiffs to proceed. Under these circumstances, dismissal would serve no purpose other than preventing adjudication of claims that the Court already determined should be permitted to proceed in amended form.

Moreover, in granting leave to amend, this Court found that Plaintiffs had demonstrated diligence, that "any prejudice to Defendants is minimal," and that holding otherwise would be "inconsistent with facilitating a determination of Plaintiffs' case on the merits and the interests of justice." ECF No. 51 at 6; *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissing the action over the timing of the authorized pleading would undo that determination without any corresponding benefit to Defendants.

Accordingly, the Court should exercise its discretion to excuse the delay and deem the Amended Complaint (ECF No. 52) timely filed nunc pro tunc. Alternatively, Plaintiffs respectfully request that the Court extend the filing deadline pursuant to Fed. R. Civ. P. 6(b)(1)(B) on the ground of excusable neglect.

## II. THE CLAIMS SURVIVE UNDER EITHER VERSION OF THE AMENDED COMPLAINT

Defendants do not seek dismissal because the filed Amended Complaint (ECF No. 52) differs from the proposed amended complaint (ECF No. 43); instead, they elect to treat the proposed pleading as operative. ECF No. 57, Lee Decl. ¶¶ 8–9. The distinction does not change the outcome of this motion. Every allegation Defendants challenge appears in both versions, and the filed pleading asserts the same claims arising from the same events. The additional allegations in ECF No. 52—including Officer Hawkins' exclusion from transfers after this suit was filed, the anonymous harassing messages sent to Officer Bolden, and the comparator allegation concerning light-duty assignments (ECF No. 52 ¶¶ 70, 73)—elaborate on those same claims and are verified by each Plaintiff. Plaintiffs respectfully submit that ECF No. 52 is the operative pleading, but even if the Court treats ECF No. 43 as operative, the motion should be denied for the reasons below. Citations to "Am. Compl." refer to ECF No. 52, with parallel citations to ECF No. 43 where applicable.

## III. DEFENDANTS IMPROPERLY SEEK TO RESOLVE FACTUAL DISPUTES AT THE PLEADING STAGE

A Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the truth of the allegations. To survive, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); ECF No. 51 at 3–4. The Court must accept Plaintiffs' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor.

Defendants' motion repeatedly asks the Court to resolve factual issues that cannot properly be decided on a Rule 12(b)(6) motion. Defendants challenge the sufficiency of Plaintiffs' joint-employer, hostile work environment, discrimination, and retaliation allegations, as well as Ms. Seymour's allegations concerning the circumstances of her separation from employment. As shown below, each of those arguments depends on Defendants' preferred interpretation of the facts and invites the Court to disregard specific allegations that must be accepted as true at the pleading stage.

## IV. PLAINTIFF SEYMOUR HAS ADEQUATELY ALLEGED A JOINT-EMPLOYER RELATIONSHIP

Defendants argue that Ms. Seymour fails to allege that the City was her joint employer because the Amended Complaint describes only "incidental administrative accommodations." ECF No. 57 at 6. That argument ignores the Amended Complaint's central joint-employer allegation. Plaintiffs allege that Behavioral Health Team clinicians placed through the City's contract with Endeavor "receive instruction and training from BPD supervisors," are "integrated team employees," work set, full-time hours on BPD premises, perform work that "is directed by BPD" using BPD tools and materials, and that "BPD can direct their termination." Am. Compl. ¶ 12 (ECF No. 43 ¶ 13). Plaintiffs further allege that Ms. Seymour worked daily from an office inside BPD headquarters, used BPD databases and vehicles, worked under the leadership of Captain Beyer, and that BPD lieutenants and captains "made decisions about her assignments and job responsibilities." *Id.* ¶¶ 7, 10, 13. These are precisely the factors identified in Defendants' own authority—training, supervision, direction of the work, and control over

termination. *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022). No particular label is required; that the pleading does not use the phrase "joint employer" is immaterial where the facts alleged make the relationship plausible. Whether the City in fact exercised sufficient control is a fact-intensive question, and the relevant evidence concerning supervision, discipline, and termination authority rests largely in Defendants' possession.

## V. PLAINTIFFS HAVE PLAUSIBLY ALLEGED A HOSTILE WORK ENVIRONMENT

Defendants contend that the hostile work environment allegations are insufficiently severe or pervasive. ECF No. 57 at 6–7. Their argument rests on a mischaracterization of the pleading. As to Officer Hawkins, Defendants assert that his claim "arose from a single response call involving an unstable individual." *Id.* at 7. In fact, the Amended Complaint alleges a sustained course of conduct directed at Officer Hawkins by his commanding officer. Captain Beyer screamed at the team about the Internal Affairs investigation and responded with hostility when Officer Hawkins confronted her about her remarks (Am. Compl. ¶¶ 23, 31–36); she then barred him from future conferences (*id.* ¶ 42); she summoned him to her office, mocked the deaths in his family, and shouted at him when he told her that her remarks were racist (*id.* ¶¶ 43–48); and the next day, leaning on a desk beside him, she repeatedly yelled the n-word while reading a Facebook post aloud to the team (*id.* ¶ 49). *See* ECF No. 43 ¶¶ 24, 32–37, 44–51. The January 2025 incident, in which Officer Hawkins' supervisor and colleagues joined in calling him "Buckwheat," is alleged as a continuation of that environment, not its sole basis. Am. Compl. ¶ 71 (ECF No. 43 ¶ 70).

As to Officer Bolden, Defendants argue that the allegation that Captain Beyer "routinely and consistently" made racist remarks is conclusory and that Captain Beyer did not target Officer Bolden individually. ECF No. 57 at 7. Both points are wrong. The Amended Complaint pleads

the content of Captain Beyer's remarks: referring to African Americans as "the blacks," asserting that Black people commit more crimes and "tend to rob things," and using terms such as "pimp limp" and "cracker." Am. Compl. ¶ 26 (ECF No. 43 ¶ 27). It alleges that on May 2, 2022, after Officer Bolden challenged her, Captain Beyer spent approximately twenty minutes asserting that Black men are unfaithful, that Black officers are used to violence, and that Officer Bolden and Officer Wagstaff "should try hard to understand why people are racist" because "the criminality of Black people justified some racism." *Id.* ¶¶ 16–18 (ECF No. 43 ¶¶ 17–19). And it alleges that the September 29, 2022 incident took place while Captain Beyer leaned on Officer Bolden's own desk. *Id.* ¶ 49. Remarks aimed at a plaintiff in response to her own objection, and slurs voiced at her desk, are not merely "general" workplace comments. Indeed, Defendants' own authority holds that "a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997). And the Second Circuit has recognized the particular power of a supervisor's use of a racial epithet in creating a hostile work environment. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014). The precise frequency and duration of the remaining remarks are matters for discovery; at this stage, the Court must accept the allegations as true and consider the environment as a whole. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Hostile work environment claims are evaluated based on the totality of the circumstances. Discovery, not a Rule 12(b)(6) motion, is the appropriate vehicle for determining the frequency, duration, and surrounding context of discriminatory conduct. Because Plaintiffs plausibly allege repeated race-based remarks and discriminatory conduct impacting the terms and conditions of employment, dismissal of these claims is improper.

In any event, the state-law hostile work environment claims independently survive. Defendants concede that the NYSHRL standard is "more lenient" (ECF No. 57 at 7 n.3), and they have acknowledged that the 2019 amendments eliminated the "severe or pervasive" requirement, so that a plaintiff need only allege that she was subjected to inferior terms, conditions, or privileges of employment because of her protected status. ECF No. 11 at 13. The conduct alleged here readily meets that standard.

## VI. THE AMENDED COMPLAINT PLAUSIBLY ALLEGES RACE DISCRIMINATION

Defendants also challenge allegations concerning overtime assignments, disparate treatment, and other adverse employment actions. The Amended Complaint alleges that Plaintiffs, all minority employees, were treated differently than similarly situated non-minority employees and were denied opportunities and benefits made available to others. It further alleges discriminatory decision-making by supervisory personnel and identifies conduct that adversely affected Plaintiffs' employment.

These allegations easily satisfy the pleading standard applicable to employment discrimination claims. At the motion-to-dismiss stage, Plaintiffs need only plead facts supporting a minimal inference of discriminatory intent. They are not required to establish a prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Defendants' disagreement with Plaintiffs' allegations does not render those allegations implausible.

Defendants' only specific challenge to the discrimination claims concerns overtime, as to which they rely on their prior argument that the officers did not allege material harm. ECF No. 57 at 8 (citing ECF No. 11 at 18). The Amended Complaint alleges that, although overtime is assigned by seniority, Captain Beyer and another superior repeatedly allowed the least-senior

White officer to take overtime-bearing trainings and conferences without first offering them to more senior African American officers, and that White employees with lower seniority "routinely received overtime." Am. Compl. ¶ 65 (ECF No. 43 ¶ 64). The repeated, race-based diversion of compensated overtime is a material loss, not a minor inconvenience.

Defendants do not renew their alternative argument that the officers were required to grieve the overtime issue under the CBA. That argument was presented as a request for summary judgment, and Defendants expressly decline to incorporate their summary judgment arguments here. ECF No. 57, Lee Decl. ¶ 15 n.1; ECF No. 11 at 18–19; ECF No. 49 at 4. In any event, Defendants acknowledge that an employee need not exhaust a CBA grievance procedure before bringing suit under Title VII, ECF No. 11 at 18, and the officers do not seek to enforce a contractual right to overtime; they allege that overtime was allocated on the basis of race.

## VII. THE AMENDED COMPLAINT PLAUSIBLY ALLEGES RETALIATION

Defendants next argue that changes in assignments, disciplinary measures, AWOL-related charges, and related actions do not constitute materially adverse actions.

That argument fails for two reasons. First, Defendants apply the wrong standard. Their authorities describe the "materially adverse change in the terms and conditions of employment" required for a discrimination claim, and *Johnson v. Potter*, 159 F. App'x 298 (2d Cir. 2005), predates the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). Under *Burlington Northern*, which Defendants themselves cite, retaliation is actionable if the employer's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. That standard is broader than the discrimination standard and is not confined to actions affecting the terms and conditions of employment. *Id.* at 61–67. The Second Circuit has since confirmed that retaliation claims are

governed by this broader standard and that the challenged actions are assessed "either singularly or in the aggregate." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 179–80 (2d Cir. 2023). Defendants' reliance on *Starzynski v. Stanley Black & Decker, Inc.*, No. 21-3040-cv, 2022 WL 17825920 (2d Cir. Dec. 21, 2022), a non-precedential summary order decided on summary judgment, does not alter that standard. Second, Defendants evaluate each act in isolation. The Amended Complaint alleges that Officers Hawkins and Bolden complained to Internal Affairs about Captain Beyer (Am. Compl. ¶¶ 25, 53); that Captain Beyer berated the complainants as "liars" and "gossips" and objected to their use of official channels (*id.* ¶¶ 24, 27–29); and that she barred Officer Hawkins from future conferences (*id.* ¶ 42). Thereafter, Officer Hawkins was suspended for "insubordination" after objecting to light-duty assignments that a White light-duty officer did not receive (*id.* ¶ 70); Officer Bolden was marked AWOL and lost a day's pay despite submitting proper documentation (*id.* ¶ 64); and, after this suit was filed, Officer Hawkins was blocked from transferring to other units because "nobody wants to work with him," Officer Bolden received anonymous harassing messages, and fellow officers declined to donate sick leave to her for fear of retaliation (*id.* ¶ 73). *See also* ECF No. 43 ¶¶ 25–26, 44, 55, 63, 69. A suspension, a loss of pay, and exclusion from transfer opportunities would each dissuade a reasonable officer from complaining; together, they plainly state a claim. Whether Defendants had legitimate, non-retaliatory reasons for these actions—including the "insubordination" charge, *see Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000)—is a factual question that cannot be resolved on a motion to dismiss.

## VIII. THE SECTION 1983 AND EQUAL PROTECTION CLAIMS SURVIVE DISMISSAL

Defendants argue only that Section 1983 discrimination claims are analyzed under the same standards as Title VII. ECF No. 57 at 9. Because the Title VII claims are adequately pleaded, so

are the parallel Section 1983 claims, which—unlike the Title VII claims—may also proceed against Captain Beyer individually. To the extent Defendants incorporate their prior arguments (ECF No. 11 at 8, 16; ECF No. 49 at 4–5), those arguments fail as well. Plaintiffs' Section 1981 rights are asserted through Section 1983, the proper vehicle for such claims against state actors. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). And the Amended Complaint adequately alleges municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). It alleges that Plaintiffs' complaints of discrimination reached the Commissioner's desk and were not acted upon (Am. Compl. ¶ 53); that from May 2022 onward the BPD "took no action to address or remediate the discrimination" despite repeated complaints (*id.* ¶ 54); that the City failed to investigate or take corrective action when specifically called upon to do so (*id.* ¶¶ 111–112); and that, as a result, a culture of racism persists within the Department (*id.* ¶ 71). Those allegations plausibly plead deliberate indifference by municipal policymakers to known, ongoing discrimination.

## IX. THE AMENDED COMPLAINT DOES NOT IMPROPERLY CONTRADICT PRIOR ALLEGATIONS

Defendants contend that Ms. Seymour's allegation that she was terminated for filing suit contradicts allegations in the original complaint that she resigned because of a hostile work environment. The argument mischaracterizes the Amended Complaint. The termination allegation was not adopted in response to this motion: it appears in the proposed amended complaint the Court reviewed when it granted leave to amend. ECF No. 43 ¶ 58; ECF No. 51. The rule on which Defendants rely applies only where a plaintiff "blatantly" changes the facts to avoid dismissal, *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009), and the allegations here are reconcilable:

the original complaint alleged that Ms. Seymour left because of the hostile environment, and the amended pleading alleges that she first reduced her hours to avoid Captain Beyer and that her employment ended after she filed suit. Am. Compl. ¶ 56. Plaintiffs sought and obtained leave to amend. An amended pleading may supplement, clarify, or expand allegations developed through further investigation and litigation. In any event, whether Ms. Seymour resigned, was constructively discharged, was terminated, or experienced some combination of those circumstances presents a factual issue that cannot be resolved on a Rule 12(b)(6) motion. Discovery, rather than dismissal, is the appropriate mechanism for developing those facts.

## X. OFFICER HAWKINS' CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL

Defendants incorporate their prior argument that the hearing officer's decision denying Officer Hawkins benefits under General Municipal Law § 207-c precludes his claims. ECF No. 57, Lee Decl. ¶ 15; ECF No. 11 at 16–18. As the proponent of preclusion, Defendants bear the burden of showing that the identical issue was necessarily decided in the prior proceeding. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). They cannot carry it. The only question before the hearing officer was whether Officer Hawkins' claimed illness bore "a direct causal relationship" to the performance of his duties as a police officer for purposes of § 207-c benefits. ECF No. 11-1 at 14–16. The hearing officer did not decide whether Captain Beyer made the alleged remarks, whether her conduct was motivated by race, whether it created a hostile work environment, or whether Officer Hawkins suffered retaliation—none of which depends on proof of a compensable, duty-related injury. Defendants themselves concede that they "never" argued that the decision resolved whether Captain Beyer engaged in prohibited discrimination. ECF No. 49 at 6. At most, the hearing officer's finding on medical causation might bear on the measure of certain emotional-distress damages; it provides no basis to dismiss any claim. And several of the

events alleged—including the 2024 suspension, the January 2025 incident, and the post-suit exclusion from transfers (Am. Compl. ¶¶ 70–71, 73)—occurred after the May 2023 decision and could not have been considered by the hearing officer.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. Alternatively, should the Court identify any deficiency in the Amended Complaint, Plaintiffs request leave to further amend pursuant to Fed. R. Civ. P. 15(a)(2), together with such other and further relief as the Court deems just and proper.

Dated: November 13, 2026
Buffalo, NY

*/s/Prathima Reddy*

Prathima Reddy
THE REDDY LAW FIRM
455 Linwood Ave
Buffalo, NY 14209
Phone: (646) 468-4257
Fax: (510) 217-3541
Email: preddy@thereddylaw.com
E-Service: eserve@thereddylaw.com